*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BOLYARD-PRUETT/CRUMPTON/PRUETT, Minors.

UNPUBLISHED
January 19, 2023

No. 361346
Wayne Circuit Court
Family Division
LC No. 2020-000182-NA

*In re* M. M. WARREN-PRUETT, Minor.

No. 361349
Wayne Circuit Court
Family Division
LC No. 2020-000182-NA

Before: M. J. KELLY, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

In these consolidated appeals, respondent appeals as of right the termination of her parental rights to six children. In Docket No. 361346, the trial court terminated respondent's rights to EC, GB, JP, NP, and SP under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). In Docket No. 361349, the court terminated her parental rights to MW under MCL 712A.19b(3)(g) and (j). We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

This case arises from respondent's neglect, abuse, and improper supervision of her children. On February 4, 2020, she was arrested for solicitation. She informed the police that her children were home alone. Child Protective Services accompanied the police to respondent's home. When they arrived, they found NP, who was four years old, in a bedroom locked from the outside. She was naked and covered in feces, and feces was smeared on the walls and the windows. There was a bare crib mattress on the floor. JP, who was also four years old, and SP, who was seven months old, were locked inside a second bedroom. JP was unusually drowsy because respondent had given him a dose of Benadryl intended for an older child. The children were taken

-1-

into protective custody. Following a medical examination, it was determined that JP and NP suffered from severe autism.

Petitioner, the Department of Health and Human Services, filed a petition requesting the court remove the children from respondent's care and take jurisdiction over them. Respondent entered a plea of admission to jurisdiction. In addition to admitting to leaving the children alone and unsupervised in an unsuitable home, respondent admitted that JP, NP, and SP had tested positive for cocaine when they were born, and she admitted that she had used cocaine as recently as February 13, 2020. The court accepted her plea and entered an order taking jurisdiction over the children.

Thereafter, the court ordered respondent to participate in a treatment plan designed to address her substance abuse, improve her parenting skills, and assist her in obtaining suitable housing. Respondent, however, consistently failed to make progress with her treatment plan. She continued to test positive for cocaine and did not participate fully in substance-abuse treatment or other counseling. Moreover, she continued to lack suitable housing and was unable to maintain employment. Although respondent attended in-person and virtual parenting time, the visits were chaotic and respondent was unable to handle parenting-time visits where all five children were present. She was offered a parent-partner to assist her, but she did not cooperate with that service.

In the meantime, respondent became pregnant with MW. During her pregnancy, she admitted that she used cocaine and she continued to test positive for cocaine. Subsequently, MW tested positive for cocaine when she was born. She exhibited signs of cocaine withdrawal, including seizures, difficulty breathing, and increased heartrate. Because of her symptoms, she remained hospitalized for more than a month. When she was released, she still required a feeding tube and oxygen.

Petitioner filed a supplemental petition to terminate respondent's parental rights to her five older children, and filed an initial petition asking the court to take jurisdiction over MW and to terminate respondent's parental rights to her. Following a combined adjudication/termination hearing, the trial court found grounds to take jurisdiction over MW, that there were statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(g) and (j), and that termination of respondent's parental rights to MW was in MW's best interests. The court also found that there were statutory grounds to terminate respondent's parental rights to the older five children under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), and that termination of respondent's parental rights was in their best interests. This appeal follows.

## II. STATUTORY GROUNDS

## A. STANDARD OF REVIEW

Respondent argues that the trial court clearly erred by finding statutory grounds to terminate her parental rights to the children. This Court reviews for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence. *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been

committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id.* at 296-297.

## B. ANALYSIS

### 1. OLDER CHILDREN

The court terminated respondent's parental rights to the five older children under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). Termination is warranted under MCL 712A.19b(3)(c)(*i*) and (c)(*i*) if the court finds by clear and convincing evidence that

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

The initial dispositional order was entered in March 2020, and the order terminating respondent's parental rights to the older children was entered in May 2022. The conditions that led to the adjudication included respondent's substance abuse, her lack of appropriate housing for the children, and her neglect and improper supervision of the children. Despite more than two years of services, respondent was unable to rectify the conditions that led to the adjudication.

In particular, respondent was unable to remedy her long-standing substance abuse problem. As part of her plea of admission, she admitted that she started using cocaine when she was 18 years old and that she had used continuously since then. She also admitted that two of her children had tested positive for cocaine after she gave birth to them. To address this condition, petitioner referred respondent for drug screens, a substance-abuse assessment, and substance-abuse counseling. Respondent never participated in the court-ordered substance abuse assessment, and she did not attend weekly therapy. In August 2020 and January 2021, respondent admitted herself into two separate in-patient substance abuse facilities. However, she was expelled from both facilities after five days because she engaged in physical altercations with other residents. Respondent admitted that she continued to use cocaine during the pendency of the child protective proceedings, and her drug screens corroborated her admissions. Respondent submitted to 18 of 54 offered drug screens. She tested positive for cocaine 18 times, tested positive for methamphetamine twice, and tested positive for THC once. Thus, 100% of the drug screens that she submitted reflected that substance-abuse continued to be a problem. Indeed, respondent admittedly used cocaine while pregnant with MW.

-3-

On appeal, respondent contends that her use of cocaine did not harm the children after they were born and that she never arrived at parenting time under the influence. The evidence belies these assertions. Witnesses testified that respondent appeared lethargic during visits and often fell asleep. From this, a trier of fact could infer that respondent was under the influence of drugs when she visited her children. Given this record, the trial court did not clearly err in finding that more than 182 days had elapsed since the initial dispositional order and that one of the conditions leading to adjudication—respondent's substance abuse—had not been rectified. Moreover, given that respondent had made no progress in the more than two-year period between the initial adjudication and the termination hearing, the trial court did not clearly err by finding that she would be unable to rectify that condition within a reasonable time.

Likewise, the other conditions leading to the adjudication had not been rectified. Respondent continued to lack suitable housing. A caseworker testified that when she evaluated the home, it was cluttered and that there were drug paraphernalia and baggies of a substance suspected to be cocaine. Because of these conditions, the caseworker determined that the home was not suitable for the children. Regarding a legal source of income, respondent claimed to be employed, but she never provided verification of gainful employment.

Respondent also failed to benefit from parenting classes. First, she only attended one of two recommended parenting classes. Second, she insisted on virtual parenting time as opposed to in-person parenting time. Initially, she expressed concern about COVID-19 exposure, but she later admitted that her twins were too much for her to handle and that it was just easier for her to have virtual visits. As a result, at the time of the termination hearing she had not seen her older children in person in approximately 11 months. The parenting-time visits—regardless of whether they were virtual or in-person—were chaotic. During the virtual visits, respondent's young children struggled to focus on the camera and respondent generally talked with either her caseworkers or the foster parents. She appeared lethargic during the visits, would sometimes "doze off," and would occasionally abruptly leave the virtual visitation. At times she would just shut off her camera. During the in-person visits, respondent struggled to manage all of the children. She often requested that the caseworker not bring the twins—both of whom are autistic—to parenting time. Frequently, she left SP in her stroller the entire visit. Respondent also made hurtful comments to the children that negatively affected them after the visit. For example, she called GB fat. GB would usually hyperventilate in the car ride home and would then cry herself to sleep. Respondent referred to EC as a "pimp." He expressed suicidal thoughts and required extra therapy sessions.

In sum, respondent failed to rectify her substance-abuse issues. She continued to lack appropriate housing for the children and did not have a verified source of income. Moreover, despite completing a parenting-skills class, she was unable to show that she had benefited. Given the substantial length of time provided for her to rectify the conditions leading to adjudication, and

considering the young ages of the children, the trial court did not clearly err by finding that termination was warranted under MCL 712A.19b(3)(c)(*i*) and (c)(*ii*).[1]

## 2. YOUNGEST CHILD

The trial court found statutory grounds to terminate respondent's parental rights to MW under MCL 712A.19b(3)(g) and (j). Termination is warranted under MCL 712A.19b(3)(g) if the court finds by clear and convincing evidence that

> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

As noted above, MW tested positive for cocaine when she was born. She suffered severe cocaine-withdrawal symptoms, including seizures, difficulty breathing, and increased heartrate. Because of respondent's admitted drug-use during her pregnancy, MW was hospitalized for over one month and required a feeding tube and oxygen even after she was discharged. At that time, respondent's older children had been removed due to respondent's substance abuse, lack of suitable housing, and neglect and improper supervision of them. She had been offered services for approximately one year to address each of those barriers to reunification. She had not shown any benefit. Indeed, her continued drug use reflects that she was not complying with her case services plan. Under such circumstances, respondent failed to provide MW with proper care and custody. Moreover, given that respondent had not shown any benefit—not even a minimal decrease—in her substance abuse or an improvement to her parenting skills, there is no reasonable expectation that respondent would be able to provide MW with proper care and custody within a reasonable time. See *In re LaFrance*, 306 Mich App 713; 858 NW2d 143 (2014) (stating that "[h]ow a parent treats one child is certainly probative of how that parent may treat other children.") (quotation marks and citation omitted).

## III. BEST INTERESTS

## A. STANDARD OF REVIEW

Respondent also challenges the trial court's finding that termination of her parental rights was in the children's best interests. We review for clear error the court's finding that termination is in a child's best interests. *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009).

## B. ANALYSIS

The court may consider several factors when deciding if termination of parental rights is in a child's best interests, including the child's bond to the parent, the parent's parenting ability,

---

[1] If this Court finds that the trial court did not clearly err as to the existence of one ground for termination, this Court need not address any additional termination grounds. See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. *In re Olive/Metts,* 297 Mich App 35, 42; 823 NW2d 144 (2012). The court may also consider psychological evaluations, the child's age, continued involvement in domestic violence, and a parent's history. *In re Jones,* 286 Mich App at 131. The focus is on the child, not the parent. *In re Moss,* 301 Mich App 76, 87; 836 NW2d 182 (2013).

The record reflects that the children's ages were between one year and 12 years old. The court found that the 12-year-old child, EC, had mild autism. He also suffered from severe mental health issues and was receiving therapy. While in foster care, EC disclosed significant abuse and neglect while in respondent's care. Contact with respondent was a trauma-trigger for EC. Indeed, after visits with respondent, EC expressed thoughts of self-harm. He was vocal about not having a continued relationship with respondent. At the time of termination, EC had been placed in the same foster home for almost two years. These caregivers had not fully committed to planning long term, but they indicated a continued willingness to consider adoption. Weighing all of these factors, the trial court did not clearly err when it found that termination of respondent's parental rights to EC was in the child's best interests. It is evident from the record that EC had a strong need for finality in order to ensure his mental and emotional well-being. A child's need for finality is a proper factor for the court to consider when balancing a child's best interests. *In re Olive/Metts*, 297 Mich App at 42.

Eleven-year-old GB was placed with her legal father. The stability created by this placement allowed her to thrive academically, physically, and emotionally. Similar to EC, she reported that she had been physically and sexually abused while in respondent's care. Respondent admitted knowing of the abuse, but did not think it mattered because the abuser was dead. Moreover, based on respondent's behavior during parenting time, GB reported that respondent seemed uninterested in visiting because she frequently appeared eager to end virtual visits. And, as indicated above, respondent would call GB "fat," which would result in the child hyperventilating on the ride home and crying herself to sleep. In light of this record, the trial court did not clearly err by finding that GB's best interests would be served by terminating respondent's parental rights so that GB could achieve finality, which would promote continued healing of the trauma caused by respondent's neglect.

The twins, JP and NP, were six years old at the time of termination. They were both nonverbal and diagnosed with autism. JP and NP both required speech and occupational therapy, but NP's behavioral issues were more difficult than JP's. Throughout the case, they were moved to multiple foster homes. Indeed, NP had stayed with six different foster families. However, at the time of termination, they were placed together and the caregivers had expressed a willingness to plan permanently for the children. By contrast, respondent was not equipped to provide proper care for them. Instead, she would request that they not be brought to in-person visits because they were too difficult to handle. The situation with three-year old SP was very similar. She was also diagnosed with autism and developmental delays. Her foster parent was willing to plan permanently for SP. Considering that respondent had not benefited from services, the trial court did not clearly err when it found that termination of respondent's parental rights was in the best interests of JP, NP, and SP. Respondent was unable—and, in the twins' case, unwilling—to parent her children, whereas the foster families had demonstrated that they could satisfy the special needs of the children in their care.

Finally, a preponderance of the evidence supports the trial court's determination that termination of respondent's parental rights was in MW's best interests. Following her discharge from the hospital at approximately one month of age, MW was placed with her legal father. Respondent had only seen MW one time during the year that preceded the termination hearing. Clearly, no bond could have developed with this limited contact. Further, MW was recently diagnosed with a syndrome that would require her to participate in physical therapy to strengthen the muscles in her torso and legs. Because respondent was unable to lead a substance-free lifestyle, and she lacked the parenting skills necessary to parent a child, special needs or otherwise, the trial court did not clearly err when it found that termination of respondent's parental rights to MW was in the child's best interests.

Nevertheless, respondent suggests that because GB and MW are in the care of their fathers, termination of her parental rights to these two children was not warranted. The trial court, however, determined that despite the children's placement with their fathers, termination of respondent's parental rights was necessary to ensure the safety of the children. That finding was not clearly erroneous.

Affirmed.

/s/ Michael J. Kelly
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle